# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

_____ Greene _____ County

| For Prothonotary Use Only: |
| --- |
| Docket No:<br>$GD-1-2022$ |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

| Lead Plaintiff's Name:<br>Thomas Donnelly | Lead Defendant's Name:<br>General Electric Co. |
| --- | --- |

**Are money damages requested?** [x] Yes  [ ] No

Dollar Amount Requested:
(check one)
- [ ] within arbitration limits
- [ ] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes  [x] No

**Is this an *MDJ Appeal*?** [ ] Yes  [x] No

Name of Plaintiff/Appellant's Attorney:  David K. Houck

- [ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

## SECTION B

**Nature of the Case:**   Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

### TORT (do not include Mass Tort)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [x] Premises Liability
- [ ] Product Liability (does not include mass tort)
- [ ] Slander/Libel/ Defamation
- [x] Other:
   Negligence and Product Liab.

### MASS TORT
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:

### PROFESSIONAL LIABLITY
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:

### CONTRACT (do not include Judgments)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other

- [ ] Employment Dispute:
   Discrimination
- [ ] Employment Dispute: Other

- [ ] Other:

### REAL PROPERTY
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other:

### CIVIL APPEALS
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other

- [ ] Zoning Board
- [ ] Other:

### MISCELLANEOUS
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other:

*Updated 1/1/2011*

**EXHIBIT**
**A**
tabbies

## COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA

| | |
|---|---|
| THOMAS DONNELLY, III, an Individual, | CIVIL DIVISION |
| Plaintiff, | No. AD-1-2022 |
| v. | |
| GENERAL ELECTRIC COMPANY, a foreign entity; JOENIC STEEL, LLC, a foreign entity; E3 CONSULTING, LLC, a wholly owned subsidiary of NAES CORPORATION; a foreign entity; NAES CORPORATION; a foreign entity; and HILL TOP ENERGY CENTER LLC, a foreign entity, | COMPLAINT IN CIVIL ACTION |
| Defendants. | |

Filed on behalf of:
PLAINTIFF

Counsel of Record:

Gary J. Ogg, Esquire
PA ID#: 34515

David Kennedy Houck, Esquire
PA ID#: 202280

Eve M. Elsen, Esquire
PA ID#: 309653

**OGG, MURPHY & PERKOSKY, PC**
245 Fort Pitt Boulevard
Pittsburgh, PA 15222
412-471-8500

Firm I.D. #568

**JURY TRIAL DEMANDED**

**CERTIFICATE OF COMPLIANCE**
I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

_____
David Kennedy Houck, Esq.
PA I.D. #202280

## COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA

THOMAS DONNELLY, III, an Individual,   )   CIVIL DIVISION
)
       Plaintiff,              )   No.  _AD-1-2022_
)
       v.                 )
)
GENERAL ELECTRIC COMPANY,   )
a foreign entity; JOENIC STEEL, LLC, a   )
foreign entity; E3 CONSULTING, LLC, a   )
wholly owned subsidiary of NAES   )
CORPORATION; a foreign entity; NAES   )
CORPORATION; a foreign entity; and   )
HILL TOP ENERGY CENTER LLC, a   )
foreign entity,                 )
)
       Defendants.         )

## NOTICE TO DEFEND

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**LAWYER REFERRAL SERVICE**
Greene County Courthouse
10 East High Street
Waynesburg, PA 15370
**724-627-9118**

COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA

THOMAS DONNELLY, III, an Individual,   )   CIVIL DIVISION
                            )
      Plaintiff,               )   No.  _AD-1-2022_
                            )
      v.                   )
                            )
GENERAL ELECTRIC COMPANY,        )
a foreign entity; JOENIC STEEL, LLC, a   )
foreign entity; E3 CONSULTING, LLC, a   )
wholly owned subsidiary of NAES        )
CORPORATION; a foreign entity; NAES   )
CORPORATION; a foreign entity; and    )
HILL TOP ENERGY CENTER LLC, a    )
foreign entity,                      )
                            )
      Defendants.            )

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, THOMAS DONNELLY, III, by and through counsel, Gary J. Ogg, Esquire, David Kennedy Houck, Esquire, Eve M. Elsen, Esquire and the law firm Ogg, Murphy & Perkosky, PC, and files the foregoing Complaint in Civil Action averring as follows:

### PLAINTIFF

1.     Plaintiff, THOMAS DONNELLY, III (hereinafter "Plaintiff"), is an adult individual and a resident of the City of Pittsburgh, Allegheny County, Pennsylvania.

### DEFENDANTS

2.     Defendant, GENERAL ELECTRIC COMPANY (hereinafter "GE") is a foreign entity with a principal place of business at, 1 River Road, Schenectady, New York 12345; and a Registered Agent accepting service at, 5 Necco Street, Boston, Massachusetts 02210. At all times relevant, GE was responsible for supplying and/or installing the component parts for natural gas/hybrid powered turbines and generators for use at the Hilltop Energy Center located in Cumberland Township, Greene County, Pennsylvania. GE regularly conducts business within the Commonwealth of Pennsylvania by distributing, selling, supplying and/or installing its products after placing them into the stream of commerce. At all times relevant, GE acted through its agents,

servants, and employees, who conducted themselves within the scope of their employment with and for the benefit of GE.

3.   Defendant, JOENIC STEEL, LLC (hereinafter "JOENIC") is a foreign entity with a principal place of business at, 3501 North West Winding Woods Drive, Lees Summit, Missouri 64064; and a Registered Agent accepting service at, 336 North Winnebago Drive, Lake Winnebago, Missouri 64034. At all times relevant, JOENIC was responsible for providing specialized structural steel and ductwork for the Hill Top Energy project located in Cumberland Township, Greene County, Pennsylvania. JOENIC regularly conducts business within the Commonwealth of Pennsylvania by providing specialized structural steel and ductwork for the steel fabrication industry. At all times relevant, JOENIC acted through its agents, servants, and employees, who conducted themselves within the scope of their employment with and for the benefit of JOENIC.

## FACTUAL BACKGROUND

4.   On or about September 24, 2020, Plaintiff was working at the Hilltop Energy Center ("*situs*") employed as a "Boilermaker Journeyman" for Kiewat Power Constructors and was severely injured while assisting in a non-critical lift of a large 12,400 lbs. expansion joint that shipped to the *situs* in two (2) discrete sections.

5.   At all times relevant, at approximately 9:45 am, Plaintiff was on the ground assisting the crane while lifting one (1) of the 6200 lbs. sections of the expansion joint for installation onto the air inlet duct for the filter house.

6.   At all times relevant, a piece of fabricated steel approximately 3-inches wide, 24-feet long and weighing 260 lbs. (hereinafter "shipping steel") was affixed with hardware to a specialized structural steel expansion joint ("expansion joint") weighing approximately 6200 lbs.; it is believed and therefore averred the purpose of the shipping steel was to maintain the integrity of the expansion joint during transport, and to provide stability during the lifting and installation process of the expansion joint onto the air inlet duct of the filter house.

4

7.    At all times relevant, it is believed and therefore averred, the shipping steel was improperly secured, fitted, held, fixed, bonded and/or tightened to the expansion joint using a mismatch or incompatible set of metric and a standard sized hardware (hereinafter "hardware").

8.    At all times relevant, the specifications for the expansion joint required the shipping steel to be removed only after installation onto the air inlet duct.

9.    At all times relevant, despite the shipping steel being affixed to the expansion joint, during the non-critical lift for installation, the expansion joint began shaking and swinging.

10.    At all times relevant, when the bottom section of the expansion joint was approximately two (2) feet from the ground with its angled peak approximately 10 to 15-ft in the air, the hardware securing the shipping steel failed.

11.    At all times relevant, Plaintiff was lawfully, carefully, and non-negligently performing his job duties when, without warning or notice, the above-described hardware securing the shipping steel failed, thereby enabling the 260 lbs. piece of steel to drop and swing dangerously, forcefully, and directly into Plaintiff's person.

12.    At all times relevant, because of the failure of the above-described hardware, the shipping steel became untethered and presented a serious risk of seriously bodily injury and/or death to any person in its trajectory, generally; and to Plaintiff, specifically.

13.    At all times relevant, as result of the above-described hardware failing, Plaintiff suffered the severe and disabling injuries complained of.

## COUNT I – NEGLIGENCE
### Plaintiff v. GENERAL ELECTRIC COMPANY

14.    Plaintiff incorporates by reference Paragraphs 1 through 13 as if fully restated herein.

15.    At all times relevant, GE was acting by and through its servants, agents, ostensible agents, and employees who acted or failed to act within the scope of their authority in the course of GE's business.

16.    At all times relevant, GE owed Plaintiff a duty of care in the design, testing, manufacture, quality, and fitness of the hardware used to affix the shipping steel to the expansion joint, so as to avoid any unreasonable risk of harm or serious bodily injury to Plaintiff or others arising from the foreseeable and/or intended use of the shipping steel during installation of the expansion joint as part of the air inlet on the filter house located on the *situs.*

17.    At all times relevant, GE owed Plaintiff a duty of care in the design, testing, manufacture, quality, and fitness of the hardware affixing the shipping steel to the expansion joint, so as to avoid any condition that made it unsafe for its use and/or intended use.

18.    At all times relevant, GE furnished, designed, approved, installed, used, assembled, fabricated and/or designed the expansion joint, the shipping steel, and hardware and therefore knew or had reason to know of the peculiar and inherently dangerous propensities of these component parts; and, as such, was required to use every reasonable precaution to avoid injury.

19.    At all times relevant, GE owed Plaintiff the highest standard of care, using every reasonable precaution to avoid injury to everyone lawfully in the area of the expansion joint and shipping steel during installation which, by its nature, is an inherently dangerous activity based upon the size, weight and risks while lifting a discrete 6200 lbs. section of specialized fabricated steel by crane for installation.

20.    At all times relevant, Plaintiff performed his normal and customary job duties in a reasonably prudent and cautious manner and in a fashion free of contributory negligence.

21.    At all times relevant, Defendant GE owed a duty to adequately warn and instruct Plaintiff as to all defects in the expansion joint, shipping steel, its hardware and/or in the component parts, either known or that should have been known, so as to avoid any unreasonable risk of injury to Plaintiff or others from the foreseeable and/or intended use of the shipping steel during a non-critical lift.

22.    At all times relevant, Defendant GE had an obligation to refrain from placing into the stream of commerce an expansion joint, shipping steel and hardware that was in a defective

6

condition and/or unreasonably dangerous for its foreseeable and/or intended use, and a duty to instruct and/or warn Plaintiff and others of any such defective condition.

23.    At all times relevant, Defendant GE designed, manufactured, installed, approved and/or designed the expansion joint, the shipping steel and its hardware in the regular course of its business. The expansion joint, shipping steel and its hardware was expected to and did reach the end-user without any substantial change from its original condition.

24.    At all times relevant, at the time the expansion joint, shipping steel and its hardware left Defendant GE's control, it was in a defective condition because of the unsafe and improper design and/or manufacture.

25.    At all times relevant, at the time of Plaintiff's injury, the condition of the expansion joint, shipping steel and its hardware had not been substantially changed from its original condition when manufactured, assembled, designed, shipped and/or sold by Defendant GE.

26.    The injuries and damages suffered by Plaintiff were the direct, substantial, and proximate result of the negligence and carelessness of GE, by and through its officers, agents, ostensible agents, or employees acting within the course and scope of their authority, servitude, or employment, generally, and in the following particulars:

     a.  In designing, manufacturing, handling, distributing, and/or selling the expansion joint, shipping steel, and hardware in such a deficient manner so as to permit the use of incompatible and/or mismatched hardware thereby causing it to be defective and fail under ordinary and foreseeable use;

     b.  In failing to design, test, handle, distribute, sell and/or manufacture shipping steel with appropriate hardware that would eliminate or reduce the likelihood of failure during lifting and installation of the expansion joint;

     c.  In designing, manufacturing, handling, distributing and/or selling shipping steel with hardware such that it failed to safely and effectively secure and/or reinforce the expansion joint during the lifting and installation process;

     d.  In failing to update and/or upgrade the component parts of the expansion joint, shipping steel, and hardware to ensure that it would not fail during the ordinary and foreseeable use for which it was intended;

     e.  In designing, manufacturing, handling, distributing and/or selling the expansion joint, shipping steel and hardware with incompatible or mismatched component parts that would fail under stress;

f.  In designing, manufacturing, handling, distributing and/or selling the expansion joint, shipping steel and its hardware without appropriate safeguards ensuring that the hardware was compatible and would not fail under stress while being lifted and moved during installation;

g.  In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware that was unsafe for its intended use;

h.  In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware without an effective safety mechanism which would have prevented the dangerous use of incompatible and/or mismatched hardware;

i.  In failing to design, manufacture, handle, distribute and/or sell the expansion joint, shipping steel and its hardware such that it would prevent the 6200 lbs. instrumentality from swinging or becoming unsteady during lifting and installation;

j.  In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware which failed to adequately safeguard workers in the event the hardware came under duress during the lifting and installation process;

k.  In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware without the appropriate safeguards to ensure that the component parts were prepared for a lift based upon the design and tolerances of the hardware;

l.  In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware which failed to adequately reduce swaying and/or properly brace the expansion joint during its lift for installation;

m. In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware that malfunctioned, unexpectedly and without warning, thereby releasing and/or allowing a 260 lbs. piece of steel to swing dangerously from an elevated height and into an area occupied Plaintiff on the ground;

n.  In designing, manufacturing, handling, distributing and/or selling an expansion joint and shipping steel with inadequate warnings regarding the known and/or foreseeable dangers associated with the failure of hardware during a lift;

o.  In designing, manufacturing, handling, distributing and/or selling an expansion joint and shipping steel with inadequate written and/or visual warning signals;

p.  In failing to design, manufacture, handle, distribute and/or sell an expansion joint, shipping steel and hardware with the appropriate safeguards to alert foreseeable and/or intended users of the dangers arising from the failure of the shipping steel hardware while under stress during a lift;

q.  In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware without a detector that might alert foreseeable and/or intended users of the dangerous consequences of shipping steel hardware that fails;

r.  In failing to advise and/or warn foreseeable and/or intended users of the dangers posed by standing, walking and/or otherwise being in proximity to a falling and/or swinging 260 lbs. piece of the 3-inch shipping steel;;

s.  In failing to advise and/or otherwise warn that failing and/or mismatched hardware on the shipping steel may pose an unreasonable risk for serious injury;

t.  In failing to advise and/or otherwise recommend that properly sized and/or compatible hardware was necessary to prevent the development of a dangerous condition during normal lift and installation operations/procedures;

u.  In designing and manufacturing the expansion joint and shipping steel with hardware so that it was not safe for its intended use by foreseeable and/or intended users;

v.  In failing to design and manufacture an expansion joint and shipping steel with hardware so that it utilized technically and economically feasible design alternatives that would have significantly reduced or eliminated the risk of serious injury;

w.  In failing to provide or design a lift plan and/or complete operation and maintenance manuals for workers that may operate and/or be in an area proximate to the expansion joint and shipping steel during lifting and installation;

x.  In failing to establish and/or design a safe and adequate lift plan, including but not limited to, on-site checklists and references to standard safety guidelines, safety criteria, and lift protocols;

y.  In failing to conduct the appropriate analyses to determine the specific hazards associated with the use, operation and maintenance of an expansion joint, shipping steel and hardware during a non-critical lift;

z.  In failing to remedy specific hazards associated with the design of the expansion joint, shipping steel and its hardware;

aa. In failing to conduct adequate testing to determine whether the expansion joint, shipping steel and hardware, as designed and manufactured, was likely to cause serious injury in the event of failure during lift and/or installation;

bb. In failing to conduct adequate testing to eliminate or reduce the likelihood of serious injury from the expansion joint, shipping steel and its hardware;

cc. In failing to conduct system-safe analyses, including but not limited to, the compatibility of the shipping steel hardware; the type and kind of stresses that would be applied to the shipping steel hardware during lift and installation; and whether the shipping steel hardware was fit for a particular use for which it was designed and/or manufactured;

dd. In failing to warn and instruct Plaintiff of the possibility of the expansion joint, shipping steel and hardware failing during lift;

ee. In failing to warn and instruct Plaintiff of the hazards and risks arising from the unexpected failure of the expansion joint, shipping steel and/or hardware;

9

ff. In failing to warn and instruct Plaintiff as to the appropriate action to be taken in the event of the sudden collapse of the expansion joint and/or shipping steel from failing hardware;

gg. In failing to train and/or warn Plaintiff that failures involving the shipping steel hardware may result in the sudden and unexpected drop of the expansion joint and/or shipping steel;

hh. In failing to train and/or warn Plaintiff that the shipping steel hardware could fail unexpectedly and without warning;

ii. In failing to warn and instruct Plaintiff that the expansion joint, shipping steel and hardware was defectively designed and manufactured;

jj. In failing to recall the expansion joint, shipping steel and hardware once it was learned that it could drop and/or suddenly fail as a result of its defective design and manufacturing; and

kk. In failing to recall the expansion joint, shipping steel and hardware as a result of its defective condition.

27.   As a result of Defendant GE's negligence as alleged above, Plaintiff sustained the following injuries:

a.   Severe pain and discomfort to his thoracic spine;

b.   Severe injury to his thoracic spine, including fracture;

c.   Severe pain and discomfort to his left ankle;

d.   Severe injury to the left ankle, including an open reduction and internal fixation surgery;

e.   Severe pain and discomfort in his right clavicle;

f.   Severe injury to his right clavicle, including fracture;

g.   Severe pain and discomfort to his ribs;

h.   Severe injury to his ribs, including fracture;

i.   Disruption and exhaustion from sleep deprivation caused by pain and discomfort;

j.   Severe emotional distress and shock to his nerves and nervous system; and

k.   Some or all of the above injuries may be permanent in nature.

28.   As a result of these injuries, Plaintiff suffered and will continue to suffer the following damages:

a.   Medical expenses for services and supplies incident to the treatment of his injuries;

b.   Loss of past, present and future earnings;

c.   Impairment of Plaintiff's general health, strength and vitality;

d.   Past, present and future pain and suffering;

e.   Past, present and future anguish, embarrassment and inconvenience from disfigurement;

f.   A reduction of in the ability to perform some of the routine functions of daily living;

g.   Deprivation of the ability to enjoy ordinary pleasures of his life; and

h.   All other losses and damages recoverable by law.

WHEREFORE, Plaintiff, THOMAS DONNELLY, III, claims damages against Defendant GENERAL ELECTIRC COMPANY in a sum in excess of the applicable arbitration limits and demands a trial by jury.

## COUNT II – STRICT LIABILITY/CONSUMER EXPECTATION
### Plaintiff v. GENERAL ELECTRIC COMPANY

29.    Plaintiff incorporates by reference Paragraphs 1 through 28 as if fully restated herein.

30.    The unreasonably dangerous nature of the defective and/or malfunctioning expansion joint, shipping steel and hardware, and Plaintiff's reliance on such features, rendered the instrumentality and its component parts dangerous for its use and/or intended use.

31.    The severe injuries incurred by Plaintiff, as previously set forth more fully, were proximately and directly caused when Defendant GE introduced into the stream of commerce an expansion joint, shipping steel and hardware that was in a defective condition.

32.    Defendant GE placed the expansion joint, shipping steel and hardware into the stream of commerce with the above-described defective and/or malfunctioning components and without all the elements necessary for the instrumentality to be safe for its use and/or intended use and/or without the elements necessary to be safe for its foreseeable and/or intended use.

33.    The nature of the defective design and/or the manufacturing defect of the expansion joint, shipping steel and hardware was such that it failed to perform as safely as Plaintiff, an ordinary

worker/end-user, would have expected it to perform when used in an intended way or used in an unintended but reasonably foreseeable way.

34.     The nature of the expansion joint, shipping steel and hardware was such that the defective design and/or manufacturing defect subjected Plaintiff, an ordinary user, and others to the risk of harm arising from its use and/or intended use.

35.     The expansion joint, shipping steel and hardware was designed and/or manufactured in such a way that Plaintiff could not reasonably anticipate and appreciate the dangerous condition of the instrumentality and the attendant risk of injury of which Plaintiff complains of.

36.     As a designer, manufacturer, assembler, handler and/or seller of the focused fabricated steel products, Defendant GE made express or implied representations that its product was safe for use and/or its intended use when introduced into the stream of commerce.

37.     Defendant GE introduced into the stream of commerce shipping steel and hardware that differed from the manufacturer's design or specifications or from other typical units of the same product line and/or was below the industry standard for the state of the art at the time.

38.     Defendant GE, through its acts, failures to act, commissions, and/or omissions as previously set forth, caused the expansion joint, shipping steel and its hardware to be defective and/or malfunction, and thus unreasonably dangerous for its foreseeable and/or intended use; and, therefore Defendant GE is strictly liable for the injuries and damages complained of.

39.     As a direct consequence and result of the conduct of Defendant GE as previously stated, Plaintiff sustained the injuries and damages complained of and as set forth above and in detail in paragraphs 27 and 28.

WHEREFORE, Plaintiff, THOMAS DONNELLY, III, claims damages against GENERAL ELECTRIC COMPANY in a sum in excess of the applicable arbitration limits and demands a trial by jury.

## COUNT III– STRICT LIABILITY/RISK UTILITY
## Plaintiff v. GENERAL ELECTRIC COMPANY

40.     Plaintiff incorporates by reference Paragraphs 1 through 39 as if fully restated herein.

41.     By introducing the expansion joint, shipping steel and hardware into the stream of commerce, Defendant GE made express or implied representations that its instrumentality was safe for use and/or its intended use, and that a reasonable person, such as Plaintiff, would conclude that the possibility and seriousness of harm was outweighed by the burden or cost of making the product safe.

42.     Defendant GE introduced the expansion joint, shipping steel and hardware into the stream of commerce at a time when the seriousness of potential harm arising from its use or intended use was outweighed by the burden or cost of making it safe.

43.     At the time the expansion joint, shipping steel and hardware was introduced into the stream of commerce by Defendant GE, the defective design and/or manufacturing defect was such that it made the likelihood that harm would occur.

44.     Defendant GE introduced the expansion joint, shipping steel and hardware into the stream of commerce at a time when the feasibility of an alternative safer design was known and/or available.

45.     Defendant GE introduced the expansion joint, shipping steel and hardware into the stream of commerce at a time when the possibility and seriousness of harm was outweighed by the burden or cost of an alternative design.

46.     Defendant GE introduced the expansion joint, shipping steel and hardware into the stream of commerce at a time when the possibility and seriousness of harm was outweighed by the disadvantages of an alternative design.

47.     Defendant GE, through its acts, failures to act, commissions, and/or omissions as previously set forth, caused the expansion joint, shipping steel and hardware to be defective and/or malfunction, and thus unreasonably dangerous; and, therefore Defendant GE is strictly liable for the injuries and damages complained of.

13

48.    As a direct consequence and result of the conduct of Defendant GE as previously stated, Plaintiff sustained the injuries and damages complained of and as set forth above and in detail in paragraphs 27 and 28.

WHEREFORE, Plaintiff, THOMAS DONNELLY, III, claims damages against GENERAL ELECTRIC COMPANY in a sum in excess of the applicable arbitration limits and demands a trial by jury.

## COUNT IV – BREACH OF WARRANTY
### Plaintiff v. GENERAL ELECTRIC COMPANY

49.    Plaintiff incorporates by reference Paragraphs 1 through 48 as if fully restated herein.

50.    Defendant GE warranted that the expansion joint, shipping steel and hardware was merchantable and fit for the purpose for which it was intended.

51.    Plaintiff was a person lawfully in the area near or around the expansion joint, shipping steel and hardware when it failed and had reasonably relied upon the express or implied warranties from Defendant GE regarding its safety and/or fitness for its use and/or intended use.

52.    The injuries and damages sustained by Plaintiff were proximately caused by Defendant GE's breach of express and implied warranties as follows:

   a.  In breaching express warranties that the expansion joint, shipping steel and hardware was free from defects in Defendant GE's materials and workmanship;

   b.  In breaching express warranties that the expansion joint, shipping steel and hardware would function properly during its foreseeable and/or intended use;

   c.  In designing, manufacturing, distributing, assembling and/or selling an expansion joint, shipping steel and hardware that was not fit for the particular purpose for which it was sold;

   d.  In designing, manufacturing, distributing, assembling and/or selling an expansion joint, shipping steel and hardware that failed to adequately perform during foreseeable and/or intended use by intended users; and

   e.  In designing, manufacturing, distributing, assembling and/or selling an expansion joint, shipping steel and hardware that was not merchantable.

53.     The warranties were breached by Defendant GE with the advent of the previously mentioned defects and/or malfunctions associated with the expansion joint, shipping steel and hardware.

54.     As a direct and proximate consequence of the conduct and breaches of warranty by Defendant GE, Plaintiff sustained the injuries and damages complained of and as set forth above and in detail in paragraphs 27 and 28.

WHEREFORE, Plaintiff, THOMAS DONNELLY, III, claims damages against GENERAL ELECTRIC COMPANY in a sum in excess of the applicable arbitration limits and demands a trial by jury.

### COUNT V – NEGLIGENCE
#### Plaintiff v. JOENIC STEEL, LLC

55.     Plaintiff incorporates by reference Paragraphs 1 through 54 as if fully restated herein.

56.     At all times relevant, JOENIC was acting by and through its servants, agents, ostensible agents, and employees who acted or failed to act within the scope of their authority in the course of JOENIC's business.

57.     At all times relevant, JOENIC owed Plaintiff a duty of care in the design, testing, manufacture, quality, and fitness of the hardware used to affix the shipping steel to the expansion joint, so as to avoid any unreasonable risk of harm or serious bodily injury to Plaintiff or others arising from the foreseeable and/or intended use of the shipping steel during installation of the expansion joint as part of the air inlet on the filter house located on the *situs.*

58.     At all times relevant, JOENIC owed Plaintiff a duty of care in the design, testing, manufacture, quality, and fitness of the hardware used to affix the shipping steel to the expansion joint, so as to avoid any condition that made it unsafe for its use and/or intended use.

59.     At all times relevant, JOENIC furnished, designed, approved, installed, used, assembled, fabricated and/or designed the expansion joint, the shipping steel, and hardware and therefore knew or had reason to know of the peculiar and inherently dangerous propensities of

these component parts; and, as such, was required to use every reasonable precaution to avoid injury.

60.     At all times relevant, JOENIC owed Plaintiff the highest standard of care, using every reasonable precaution to avoid injury to everyone lawfully in the area of the expansion joint and shipping steel during installation which, by its nature, is an inherently dangerous activity based upon the size, weight and risks while lifting a discrete 6200 lbs. section of specialized fabricated steel by crane for installation.

61.     At all times relevant, Plaintiff performed his normal and customary job duties in a reasonably prudent and cautious manner and in a fashion free of contributory negligence.

62.     At all times relevant, Defendant JOENIC owed a duty to adequately warn and instruct Plaintiff as to all defects in the expansion joint, shipping steel, its hardware and/or in the component parts, either known or that should have been known, so as to avoid any unreasonable risk of injury to Plaintiff or others from the foreseeable and/or intended use of the shipping steel during a non-critical lift.

63.     At all times relevant, Defendant JOENIC had an obligation to refrain from placing into the stream of commerce an expansion joint, shipping steel and hardware that was in a defective condition and/or unreasonably dangerous for its foreseeable and/or intended use, and a duty to instruct and/or warn Plaintiff and others of any such defective condition.

64.     At all times relevant, Defendant JOENIC designed, manufactured, installed, approved and/or designed the expansion joint, the shipping steel, and its hardware in the regular course of its business. The expansion joint, shipping steel and its hardware was expected to and did reach the end-user without any substantial change from its original condition.

65.     At all times relevant, at the time the expansion joint, shipping steel and its hardware left Defendant JOENIC's control, it was in a defective condition because of the unsafe and improper design and/or manufacture.

66.    At all times relevant, at the time of Plaintiff's injury, the condition of the expansion joint, shipping steel and its hardware had not been substantially changed from its original condition when manufactured, assembled, designed, shipped and/or sold by Defendant JOENIC.

67.    The injuries and damages suffered by Plaintiff were the direct, substantial, and proximate result of the negligence and carelessness of JOENIC, by and through its officers, agents, ostensible agents, or employees acting within the course and scope of their authority, servitude, or employment, generally, and in the following particulars:

a.    In designing, manufacturing, handling, distributing, and/or selling the expansion joint, shipping steel, and hardware in such a deficient manner so as to permit the use of incompatible and/or mismatched hardware thereby causing it to be defective and fail under ordinary and foreseeable use;

b.    In failing to design, test, handle, distribute, sell and/or manufacture shipping steel with appropriate hardware that would eliminate or reduce the likelihood of failure during lifting and installation of the expansion joint;

c.    In designing, manufacturing, handling, distributing and/or selling shipping steel with hardware such that it failed to safely and effectively secure and/or reinforce the expansion joint during the lifting and installation process;

d.    In failing to update and/or upgrade the component parts of the expansion joint, shipping steel, and hardware to ensure that it would not fail during the ordinary and foreseeable use for which it was intended;

e.    In designing, manufacturing, handling, distributing and/or selling the expansion joint, shipping steel and hardware with incompatible or mismatched component parts that would fail under stress;

f.    In designing, manufacturing, handling, distributing and/or selling the expansion joint, shipping steel and its hardware without appropriate safeguards ensuring that the hardware was compatible and would not fail under stress while being lifted and moved during installation;

g.    In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware that was unsafe for its intended use;

h.    In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware without an effective safety mechanism which would have prevented the dangerous use of incompatible and/or mismatched hardware;

i.    In failing to design, manufacture, handle, distribute and/or sell the expansion joint, shipping steel and its hardware such that it would prevent the 6200 lbs. instrumentality from swinging or becoming unsteady during lifting and installation;

j.   In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware which failed to adequately safeguard workers in the event the hardware came under duress during the lifting and installation process;

k.   In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware without the appropriate safeguards to ensure that the component parts were prepared for a lift based upon the design and tolerances of the hardware;

l.   In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware which failed to adequately reduce swaying and/or properly brace the expansion joint during its lift for installation;

m.   In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware that malfunctioned, unexpectedly and without warning, thereby releasing and/or allowing a 260 lbs. piece of steel to swing dangerously from an elevated height and into an area occupied Plaintiff on the ground;

n.   In designing, manufacturing, handling, distributing and/or selling an expansion joint and shipping steel with inadequate warnings regarding the known and/or foreseeable dangers associated with the failure of hardware during a lift;

o.   In designing, manufacturing, handling, distributing and/or selling an expansion joint and shipping steel with inadequate written and/or visual warning signals;

p.   In failing to design, manufacture, handle, distribute and/or sell an expansion joint, shipping steel and hardware with the appropriate safeguards to alert foreseeable and/or intended users of the dangers arising from the failure of the shipping steel hardware while under stress during a lift;

q.   In designing, manufacturing, handling, distributing and/or selling an expansion joint, shipping steel and hardware without a detector that might alert foreseeable and/or intended users of the dangerous consequences of shipping steel hardware that fails;

r.   In failing to advise and/or warn foreseeable and/or intended users of the dangers posed by standing, walking and/or otherwise being in proximity to a falling and/or swinging 260 lbs. piece of the 3-inch shipping steel;

s.   In failing to advise and/or otherwise warn that failing and/or mismatched hardware on the shipping steel may pose an unreasonable risk for serious injury;

t.   In failing to advise and/or otherwise recommend that properly sized and/or compatible hardware was necessary to prevent the development of a dangerous condition during normal lift and installation operations/procedures;

u.   In designing and manufacturing the expansion joint and shipping steel with hardware so that it was not safe for its intended use by foreseeable and/or intended users;

v.   In failing to design and manufacture an expansion joint and shipping steel with hardware so that it utilized technically and economically feasible design alternatives that would have significantly reduced or eliminated the risk of serious injury;

w.  In failing to provide or design a lift plan and/or complete operation and maintenance manuals for workers that may operate and/or be in an area proximate to the expansion joint and shipping steel during lifting and installation;

x.  In failing to establish and/or design a safe and adequate lift plan, including but not limited to, on-site checklists and references to standard safety guidelines, safety criteria, and lift protocols;

y.  In failing to conduct the appropriate analyses to determine the specific hazards associated with the use, operation and maintenance of an expansion joint, shipping steel and hardware during a non-critical lift;

z.  In failing to remedy specific hazards associated with the design of the expansion joint, shipping steel and its hardware;

aa. In failing to conduct adequate testing to determine whether the expansion joint, shipping steel and hardware, as designed and manufactured, was likely to cause serious injury in the event of failure during lift and/or installation;

bb. In failing to conduct adequate testing to eliminate or reduce the likelihood of serious injury from the expansion joint, shipping steel and its hardware;

cc. In failing to conduct system-safe analyses, including but not limited to, the compatibility of the shipping steel hardware; the type and kind of stresses that would be applied to the shipping steel hardware during lift and installation; and whether the shipping steel hardware was fit for a particular use for which it was designed and/or manufactured;

dd. In failing to warn and instruct Plaintiff of the possibility of the expansion joint, shipping steel and hardware failing during lift;

ee. In failing to warn and instruct Plaintiff of the hazards and risks arising from the unexpected failure of the expansion joint, shipping steel and/or hardware;

ff. In failing to warn and instruct Plaintiff as to the appropriate action to be taken in the event of the sudden collapse of the expansion joint and/or shipping steel from failing hardware;

gg. In failing to train and/or warn Plaintiff that failures involving the shipping steel hardware may result in the sudden and unexpected drop of the expansion joint and/or shipping steel;

hh. In failing to train and/or warn Plaintiff that the shipping steel hardware could fail unexpectedly and without warning;

ii. In failing to warn and instruct Plaintiff that the expansion joint, shipping steel and hardware was defectively designed and manufactured;

jj. In failing to recall the expansion joint, shipping steel and hardware once it was learned that it could drop and/or suddenly fail as a result of its defective design and manufacturing; and

kk. In failing to recall the expansion joint, shipping steel and hardware as a result of its defective condition.

68. As a result of Defendant JOENIC's negligence as alleged above, Plaintiff suffered the injuries and damages complained of and as set forth above and in detail in paragraphs 27 and 28.

WHEREFORE, Plaintiff, THOMAS DONNELLY, III, claims damages against Defendant JOENIC STEEL, LLC in a sum in excess of the applicable arbitration limits and demands a trial by jury.

## COUNT VI – STRICT LIABILITY/CONSUMER EXPECTATION
### Plaintiff v. JOENIC STEEL, LLC

69. Plaintiff incorporates by reference Paragraphs 1 through 68 as if fully restated herein.

70. The unreasonably dangerous nature of the defective and/or malfunctioning expansion joint, shipping steel and hardware, and Plaintiff's reliance on such features, rendered the instrumentality and its component parts dangerous for its use and/or intended use.

71. The severe injuries incurred by Plaintiff, as previously set forth more fully, were proximately and directly caused when Defendant JOENIC introduced into the stream of commerce an expansion joint, shipping steel and hardware that was in a defective condition.

72. Defendant JOENIC placed the expansion joint, shipping steel and hardware into the stream of commerce with the above-described defective and/or malfunctioning components and without all the elements necessary for the instrumentality to be safe for its use and/or intended use and/or without the elements necessary to be safe for its foreseeable and/or intended use.

73. The nature of the defective design and/or the manufacturing defect of the expansion joint, shipping steel and hardware was such that it failed to perform as safely as Plaintiff, an ordinary worker/end-user, would have expected it to perform when used in an intended way or used in an unintended but reasonably foreseeable way.

74. The nature of the expansion joint, shipping steel and hardware was such that the defective design and/or manufacturing defect subjected Plaintiff, an ordinary user, and others to the risk of harm arising from its use and/or intended use.

75. The expansion joint, shipping steel and hardware was designed and/or manufactured in such a way that Plaintiff could not reasonably anticipate and appreciate the dangerous condition of the instrumentality and the attendant risk of injury of which Plaintiff complains of.

76. As a designer, manufacturer, assembler, handler and/or seller of the focused fabricated steel products, Defendant JOENIC made express or implied representations that its product was safe for use and/or its intended use when introduced into the stream of commerce.

77. Defendant JOENIC introduced into the stream of commerce shipping steel and hardware that differed from the manufacturer's design or specifications or from other typical units of the same product line and/or was below the industry standard for the state of the art at the time.

78. Defendant JOENIC, through its acts, failures to act, commissions, and/or omissions as previously set forth, caused the expansion joint, shipping steel and its hardware to be defective and/or malfunction, and thus unreasonably dangerous for its foreseeable and/or intended use; and, therefore Defendant JOENIC is strictly liable for the injuries and damages complained of.

79. As a direct consequence and result of the conduct of Defendant JOENIC as previously stated, Plaintiff has sustained the injuries and damages complained of and as set forth above and in detail in paragraphs 27 and 28.

WHEREFORE, Plaintiff, THOMAS DONNELLY, III, claims damages against JOENIC STEEL, LLC in a sum in excess of the applicable arbitration limits and demands a trial by jury.

## COUNT VII– STRICT LIABILITY/RISK UTILITY
### Plaintiff v. JOENIC STEEL, LLC

80. Plaintiff incorporates by reference Paragraphs 1 through 79 as if fully restated herein.

81. By introducing the expansion joint, shipping steel and hardware into the stream of commerce, Defendant JOENIC made express or implied representations that its instrumentality was safe for use and/or its intended use, and that a reasonable person, such as Plaintiff, would conclude that the possibility and seriousness of harm was outweighed by the burden or cost of making the product safe.

82.     Defendant JOENIC introduced the expansion joint, shipping steel and hardware into the stream of commerce at a time when the seriousness of potential harm arising from its use or intended use was outweighed by the burden or cost of making it safe.

83.     At the time the expansion joint, shipping steel and hardware was introduced into the stream of commerce by Defendant JOENIC, the defective design and/or manufacturing defect was such that it made the likelihood that harm would occur.

84.     Defendant JOENIC introduced the expansion joint, shipping steel and hardware into the stream of commerce at a time when the feasibility of an alternative safer design was known and/or available.

85.     Defendant JOENIC introduced the expansion joint, shipping steel and hardware into the stream of commerce at a time when the possibility and seriousness of harm was outweighed by the burden or cost of an alternative design.

86.     Defendant JOENIC introduced the expansion joint, shipping steel and hardware into the stream of commerce at a time when the possibility and seriousness of harm was outweighed by the disadvantages of an alternative design.

87.     Defendant JOENIC, through its acts, failures to act, commissions, and/or omissions as previously set forth, caused the expansion joint, shipping steel and hardware to be defective and/or malfunction, and thus unreasonably dangerous; and, therefore Defendant JOENIC is strictly liable for the injuries and damages complained of.

88.     As a direct consequence and result of the conduct of Defendant JOENIC as previously stated, Plaintiff has sustained the injuries and damages complained of and as set forth above and in detail in paragraphs 27 and 28.

WHEREFORE, Plaintiff, THOMAS DONNELLY, III, claims damages against JOENIC STEEL, LLC in a sum in excess of the applicable arbitration limits and demands a trial by jury.

## COUNT VIII – BREACH OF WARRANTY
### Plaintiff v. JOENIC STEEL, LLC

89.     Plaintiff incorporates by reference Paragraphs 1 through 88 as if fully restated herein.

90.     Defendant JOENIC warranted that the expansion joint, shipping steel and hardware was merchantable and fit for the purpose for which it was intended.

91.     Plaintiff was a person lawfully in the area near or around the expansion joint, shipping steel and hardware when it failed and had reasonably relied upon the express or implied warranties from Defendant JOENIC regarding its safety and/or fitness for its use and/or intended use.

92.     The injuries and damages sustained by Plaintiff were proximately caused by Defendant JOENIC's breach of express and implied warranties as follows:

    a.  In breaching express warranties that the expansion joint, shipping steel and hardware was free from defects in Defendant JOENIC's materials and workmanship;

    b.  In breaching express warranties that the expansion joint, shipping steel and hardware would function properly during its foreseeable and/or intended use;

    c.  In designing, manufacturing, distributing, assembling and/or selling an expansion joint, shipping steel and hardware that was not fit for the particular purpose for which it was sold;

    d.  In designing, manufacturing, distributing, assembling and/or selling an expansion joint, shipping steel and hardware that failed to adequately perform during foreseeable and/or intended use by intended users; and

    e.  In designing, manufacturing, distributing, assembling and/or selling an expansion joint, shipping steel and hardware that was not merchantable.

93.     The warranties were breached by Defendant JOENIC with the advent of the previously mentioned defects and/or malfunctions associated with the expansion joint, shipping steel and hardware.

94.     As a direct and proximate consequence of the conduct and breaches of warranty by Defendant JOENIC, Plaintiff sustained the injuries and damages complained of and as set forth above and in detail in paragraphs 27 and 28.

23

WHEREFORE, Plaintiff, THOMAS DONNELLY, III, claims damages against JOENIC

STEEL, LLC in a sum in excess of the applicable arbitration limits and demands a trial by jury.

Respectfully submitted,

**Ogg, Murphy & Perkosky, PC**

Gary J. Ogg, Esquire
David Kennedy Houck, Esquire
Eve M. Elsen, Esquire
Attorneys for Plaintiff

## VERIFICATION

I, Thomas Donnelly, hereby swear and affirm that I am the Plaintiff in the within action, and that the facts contained in the Complaint in Civil Action are true and correct to the best of my information, knowledge and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Thomas Donnelly