IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| THOMAS DONNELLY III, | ) |
| Plaintiff, | ) 2:22-CV-00377-MJH |
| vs. | ) |
| GENERAL ELECTRIC COMPANY, A FOREIGN ENTITY; AND JOENIC STEEL, LLC, A FOREIGN ENTITY; | ) |
| Defendants, | |

OPINION AND ORDER

Plaintiff, Thomas Donnelly III, brings the within personal injury action against Defendants, General Electric Company and Joenic Steel, LLC, for Negligence (Counts I and V), Strict Liability/Consumer Expectation (Counts II and VI), Strict Liability/Risk Utility (Counts III and VII), and Breach of Warranty (Counts IV and VIII).

Mr. Donnelly moves for summary judgment pursuant to Fed. R. Civ. P. 56 on Defendants' Affirmative Defense of "Sole Cause." (ECF No. 85). Defendants have also moved for summary judgment. (ECF Nos. 82 and 86). These matters are now ripe for decision.

Upon consideration of the relevant pleadings, Mr. Donnelly's Motion for Summary Judgment (ECF No. 85), the respective briefs (ECF Nos. 90, 102, 111, 117 ), the Concise Statements of Material Fact and corresponding responses (ECF Nos. 115, 109, 113) the arguments of counsel, and for the following reasons, Mr. Donnelly's Motion will be granted in part and denied in part.

And upon consideration of the relevant pleadings, Defendants' Motions for Summary Judgment (ECF Nos. 82 and 86), the respective briefs (ECF Nos. 83, 87, 103, 105, 118), the Concise Statements of Material Facts and corresponding responses (ECF Nos. 84, 89, 106, 107,

108, 110, 112, 119), Exhibits (ECF Nos. 93-97 the arguments of counsel, and for the following reasons, Defendants' Motion will be denied.

    I.       Background

Mr. Donnelly was part of a local boilermaker workforce employed by Kiewit Power Constructors to work on the assembly and erection of the Hilltop Energy Center. (ECF No. 115 at ¶ 2). During the scope of this work, Mr. Donnelly suffered injuries while participating in a lift of a specially fabricated expansion joint. *Id.* at ¶ 3.

GE contracted with Joenic Steel to manufacture a portion of the gas turbine equipment known as the inlet plenum, which includes an expansion joint component. GE provided its specifications for the inlet plenum to Joenic, and Joenic manufactured those components to GE's specifications for delivery to the Project site. (ECF No. 89 at ¶ 3). Joenic also prepared "Suggested Installation Instructions" (also known as "Shop Drawings") and "Weight and Center of Gravity Drawings" for the erection and installation of the inlet plenum and expansion joint components. *Id.* at ¶ 4. Due to its large size, the expansion joint arrived at the site in two separate pieces. *Id.* at ¶ 5. The Suggested Installation Instructions provide to "assemble expansion joint halves . . . per these drawings," and the Weight and Center of Gravity Drawings show the Expansion Joint being lifted as one piece. *Id.* at ¶ 6. Kiewit decided to lift the Expansion Joint as two separate pieces for separate installation into the equipment. *Id.* at ¶ 8. Kiewit prepared an "on-the-spot" lift plan for the Expansion Joint half. *Id.* at ¶ 10. When Kiewit lifted the expansion joint half piece, it began to twist, which resulted in the prying away and detachment of a metal shipping brace. The shipping brace fell from the expansion joint and injured Mr. Donnelly. *Id.* at ¶ 9.

Mr. Donnelly has asserted claims for negligence, strict liability, and breach of warranty on the contention that the instructions on the installation of the expansion joint were inadequate and an additional component, known as a splice plate or bar, was not provided.  Defendants have generally posited that Kiewit, as the general contractor, was the entity responsible for making sure that the erection took place in a proper manner and was solely responsible for insuring the rigging was proper in order accomplish the lift safely whether the expansion joint was going to be lifted in halves or in one piece.

II.     Relevant Standard

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted.  Fed. R. Civ. P. 56(a).  Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor.  *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).  The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary

judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

    III.    Discussion

### Mr. Donnelly's Motion for Partial Summary Judgment

Mr. Donnelly moves for partial summary judgment under two categories: affirmative defenses and liability apportionment. Under the first category, Mr. Donnelly argues that a) Defendants waived the affirmative defense of "highly reckless conduct" as required under Pa.R.C.P. 1030 and *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1092 (Pa. 2012), and b) the record does not otherwise support the affirmative defenses of product misuse, highly reckless conduct, or assumption of risk. Under the second category, Mr. Donnelly maintains that Pennsylvania law bars Defendants from shifting liability to Mr. Donnelly's employer or co-employees under the Worker's Compensation Act, 77 P.S. § 1, et seq, and thus, any liability attributed to the same, may not be included for apportionment under 42 Pa.C.S. § 7102(a.2).

    1.    Affirmative Defenses

    **A. Waiver**

Mr. Donnelly contends that, in a Section 402A product liability case, Defendants were required to specifically plead "highly reckless conduct" as an affirmative defense in their Answers. Specifically, Mr. Donnelly maintains that Joenic omits any mention of "highly reckless conduct," and GE pleads generally a "sole cause" defense.

Joenic maintains that, because the Federal Rules of Civil Procedure apply, said rules do not require a defendant to plead the words "highly reckless conduct." GE asserts that it sufficiently pleaded highly reckless conduct, because it pleaded the affirmative defense of

4

misuse, which would include Mr. Donnelly's unforeseeable, outrageous, or extraordinary use of the product.

In *Reott*, the Pennsylvania Supreme Court held that "a defendant in a Section 402A action must plead and prove, as an affirmative defense, that the plaintiff acted in a highly reckless manner, if such conduct is asserted." *Id*. at 1101. In addition, *Reott* wedded product misuse and highly reckless conduct and so held that, "[b]oth misuse and highly reckless conduct involve a plaintiff's unforeseeable, outrageous, and extraordinary use of a product." *Id*. at 1097. Accordingly, *Reott* places the burden on a defendant, "to demonstrate that the injured party or decedent 'knew or had reason to know of facts which created a high degree of risk of physical harm to himself or that he deliberately proceeded to act, or failed to act, in conscious disregard of that risk.'" *Id*. at 1101.

Where a state law claim requires pleading an affirmative defense, the Third Circuit has held that the same must be pleaded. "Matters treated as affirmative defenses under state law are generally treated in the same way by federal courts in diversity cases." *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir.1991). Thus, "to assert a [state law] affirmative defense in federal court, a party must do so in a pleading or appropriate motion or else the matter is waived." *Bd. of Trustees, Roofers Local No. 30 Combined Welfare Fund v. Int'l Fid. Ins. Co.*, 63 F.Supp.3d 459, 473 (E.D. Pa. 2014), aff'd, 644 Fed.Appx. 133 (3d Cir. 2016).

    i.    <u>Joenic's Pleading</u>

In its Answer, Joenic pleaded the following pertinent affirmative defenses:

> 99. As a full and complete defense to the plaintiff's cause of action, it may be determined through discovery that intervening and superseding events cause or contributed solely to the plaintiff's injuries and damages, and as such, Joenic Steel, LLC cannot be found liable to the plaintiff.

> 100. As a full and complete defense to the plaintiff's cause of action, it is believed and therefore averred that the plaintiff may have failed to exercise that degree of care and caution requiring attempting to assist in lifting a section of the expansion joint, and as such, the plaintiff's injuries and damages were due to the conduct and actions of the plaintiff.
>
> \*\*\*
>
> 103. As a full and complete defense to the plaintiff's cause of action, it is believed and therefore averred that the plaintiff assumed a known risk of harm by engaging in the means, methods and manner by which the expansion joint was being erected, and as such, Joenic Steel, Inc. cannot be found liable to the plaintiff.

(ECF No. 7 at ¶¶ 99, 100, and 103).

Here, Joenic's argument, that Fed. R. Civ. P. 8 excuses specifically pleading "highly reckless conduct," is unavailing. Joenic does not plead either product misuse or highly reckless conduct as mandated under *Reott* for a Section 402A product liability claim. And because this Court is sitting in diversity on Mr. Donnelly's Section 402A product liability claims against Joenic (Counts VI and VII), *Reott*'s affirmative defense pleading requirements are not excused. Therefore, Joenic has waived any claim asserting Mr. Donnelly's highly reckless conduct and product misuse as affirmative defenses to Mr. Donnelly's Section 402A claims against it.

Accordingly, Mr. Donnelly's Motion for Partial Summary Judgment, as regards affirmative defenses of highly reckless conduct or product misuse for Counts VI and VII, will be granted.

    ii.    <u>GE's Pleading</u>

In its Answer, GE pleaded the following pertinent affirmative defenses:

**THIRD AFFIRMATIVE DEFENSE**

> Plaintiff's alleged injuries, damages and/or losses may be reduced and/or barred by the comparative negligence and/or assumption of the risk of Plaintiff.

**FOURTH AFFIRMATIVE DEFENSE**

6

Plaintiff's claims against Defendant GE are barred to the extent Plaintiff's conduct was the sole cause of the alleged incident.

### FIFTH AFFIRMATIVE DEFENSE

If Plaintiff suffered damages and/or losses as alleged in the Complaint, which is denied, any such damages and/or losses were caused and/or contributed to by the conditions or persons and/or entities over which Defendant GE had no control and for which Defendant GE is not responsible.

### SIXTH AFFIRMATIVE DEFENSE

The conduct of persons and/or entities other than Defendant GE constitutes an intervening, superseding cause, obviating any liability on the part of Defendant GE, the existence of which any such liability being expressly and specifically denied.

### SEVENTH AFFIRMATIVE DEFENSE

The alleged damages out of which this action arises were not caused by any condition of the product which existed at the time the product and/or components were in the possession, custody and/or control of Defendant GE.

### EIGHTH AFFIRMATIVE DEFENSE

If the damages alleged were caused by a condition of the product in question on the day of the incident as alleged in the Complaint, said condition may have been the result of misuse, abuse or neglect, or substantial alteration, modification and/or change in the product between the time it left the custody, possession and/or control of Defendant GE and the time at which the alleged incident occurred, and not by any condition which existed at the time said product was in the possession, custody and/or control of Defendant GE.

(ECF No. 5 at pp. 8-9).

Here, unlike Joenic, GE has pleaded an affirmative defense that Mr. Donnelly's damages were caused by product misuse. And because *Reott* does not practically distinguish between a plaintiff's conduct in the context of product misuse or highly reckless conduct, GE sufficiently preserved these defenses to Mr. Donnelly's Section 402A claims (Counts II, III, and IV) against GE. Therefore, GE has not waived highly reckless conduct and product misuse as affirmative

defenses to Mr. Donnelly's Section 402A claims against it.  Accordingly, Mr. Donnelly's Motion for Summary Judgment, as to GE's 402A's Affirmative defense, is denied.

### B. Merits-Based Argument on Affirmative Defenses

Next, Mr. Donnelly maintains that Defendants' affirmative defenses of product misuse, highly reckless conduct, assumption of the risk fai,l because Mr. Donnelly and the rigging crew attempted to use the expansion joint as intended, but were without critical components and clear instructions. Further, Mr. Donnelly contends that the boilermakers devised a reasonable "on-the-spot" lift plan following standard practice and used the materials provided.  Mr. Donnelly argues that Defendants' experts or engineers have not characterized said lift plan as unreasonably dangerous or extraordinary, such that it constituted an unforeseeable misuse of the product.

GE maintains that Mr. Donnelly and Kiewit engaged in an unsafe lift of the expansion joint half.  GE further asserts that its expert, Dr. Oliver, testified that the "on-the-spot" lift plan caused a dangerous amount of torsion in the component during the lift. GE also argues that Kiewit's investigation after the incident criticized the actions of its crew. GE contends that the evidence further demonstrates that Mr. Donnelly and the rest of the Kiewit crew understood the specific danger posed by Kiewit's unsupported lift.  GE's expert, Duane Cochran also opined that Mr. Donnelly's self-positioning during the crane lift caused his damages.  Joenic has not specifically addressed Mr. Donnelly's merits-based affirmative defense arguments.

"Both misuse and highly reckless conduct involve a plaintiff's unforeseeable, outrageous, and extraordinary use of a product."  *Reott v. Asia Trend, Inc.*, 618 Pa. 228, 243, 55 A.3d 1088, 1097 (2012).  "Normally, the issue of whether conduct involved in misuse is foreseeable is to be resolved by the jury." *Dougherty v. Edward J. Meloney Inc.*, 443 Pa. Super. 201, 224, 661 A.2d 375, 386 (1995), appeal denied, 544 Pa. 608, 674 A.2d 1072 (1996). The question of assumption

of the risk typically remains for the jury, and it is only where the evidence reveals a scenario so clear as to void all questions of material fact concerning the plaintiff's own conduct that the court can enter summary judgment. *Thompson v. Ginkel*, 95 A.3d 900, 907 (Pa. 2014) (citing *Montagazzi v. Crisci*, 994 A.2d 626, 636 (Pa.Super. 2010)). Assumption of the risk requires a factual analysis of the plaintiff's subjective understanding of the risks involved. *Sansom v. Crown Equip. Corp.*, 880 F.Supp.2d 648, 666 (W.D.Pa.2012).

Here, Defendants cite adequate evidence, at the summary judgment stage, to establish a jury question regarding Mr. Donnelly's conduct and the conduct of Mr. Donnelly as part of Kiewit's crew. Defendants' experts raise sufficient questions about how the lift was performed and about Mr. Donnelly's participation in the lift. This testimony, along with Mr. Donnelly's subjective understanding of the risks, raise issues of credibility best addressed by a jury. Therefore, the Court cannot determine, as a matter of law, that GE cannot meet its burden on the affirmative defenses of misuse, assumption of risk, or highly reckless conduct or that Joenic cannot meet its burden for assumption of risk.

Accordingly, Mr. Donnelly's Motion for Partial Summary Judgment, as regards the merits of Defendants' affirmative defenses, will be denied.

2. Liability Apportionment

Finally, Mr. Donnelly argues that Defendants may not invoke employer fault to avoid strict liability. Specifically, Mr. Donnelly maintains that, under Section 7102(a.2) of the Fair Share Act, Defendants may not attribute responsibility to an employer who has been granted immunity under the Worker's Compensation Act.

Joenic and GE contend that it is permitted to offer evidence that the actions of Kiewit and its employees were the sole, factual, and superseding cause of the accident.

The Pennsylvania Comparative Negligence Statute states in relevant part as follows:

**(a.2) Apportionment of responsibility among certain nonparties and effect.--** For purposes of apportioning liability only, the question of liability of any defendant or other person who has entered into a release with the plaintiff with respect to the action and who is not a party shall be transmitted to the trier of fact upon appropriate requests and proofs by any party. A person whose liability may be determined pursuant to this section does not include an employer to the extent that the employer is granted immunity from liability or suit pursuant to the act of June 2, 1915 (P.L. 736, No. 338), known as the Workers' Compensation Act. An attribution of responsibility to any person or entity as provided in this subsection shall not be admissible or relied upon in any other action or proceeding for any purpose. Nothing in this section shall affect the admissibility or nonadmissibility of evidence regarding releases, settlements, offers to compromise or compromises as set forth in the Pennsylvania Rules of Evidence. Nothing in this section shall affect the rules of joinder of parties as set forth in the Pennsylvania Rules of Civil Procedure.

42 Pa.C.S. § 7102(a.2).

Here, Mr. Donnelly seeks a sweeping ruling on the introduction of evidence vis-à-vis Kiewit's conduct. Kiewit has immunity under the Worker's Compensation Act, and as such, it cannot be held jointly liable in this action under the Comparative Negligence statute. While a jury in this case may not assign Kiewit any apportionment of liability, this Court does not read anything more in the Comparative Negligence statute that would otherwise prevent introducing other evidence that would speak to the cause of Mr. Donnelly's injuries. Therefore, the Court will grant Mr. Donnelly's Motion for Partial Summary Judgment on the issue of apportioning liability to Kiewit. However, as to any other evidentiary or causation issues related to Kiewit, said issues are premature.

### Joenic and GE's Motions for Summary Judgment

The plaintiff has set forth four separate counts against Joenic Steel and GE each for negligence (Counts I and V), strict liability/consumer expectation (Counts II and VI), strict liability/risk utility (Counts III and VII), and breach of warranty (Count IV and VIII) .

A. Negligence (Counts I and V)

Defendants argue that the testimony and evidence in this case establishes no deficiencies or defects in the shipping steel and the hardware of the expansion joint.  Both further contend that the sole cause of the accident was Kiewit and the boilermakers' failure to ensure that the shipping steel was properly connected to the expansion joint after it had been removed multiple times and replaced.  They further maintain that lifting only half of the expansion joint was performed in an improper, and dangerous manner.  Joenic also argues that the unexpected and unforeseeable conduct of Kiewit and the boilermakers was a superseding cause of the incident.  GE separately asserts that the plain language of its contract with Kiewit assigned Kiewit the sole responsibility for erection and construction of the gas turbine inlet plenum, which included lifting and installing the expansion joint.

Mr. Donnelly argues that Joenic admitted to supplying an expansion joint without factory-installed splice bars and which was accompanied by vague, conflicting instructions.  Mr. Donnelly also contends that GE's responsibilities included the final review and approval of all drawings, instructions, details, and the authority to escalate any field issues through its own internal case review process, as needed.  Mr. Donnelly asserts that GE provided "Suggested Installation Instructions" to Kiewit and that GE had a nondelegable duty to ensure that the expansion joint was not defective and had adequate instructions and warnings.

In order to prevail upon a claim of negligence, the plaintiff must show (1) a duty that the law recognizes, (2) a failure on the defendant's part to comport to that duty, or a breach of it, (3) a causal connection between the defendant's breach and the resulting injuries and (4) actual loss or damage that the plaintiff suffered. *Alcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1222 (Pa. 2002).

Under Pennsylvania law, "a superseding cause is an act of a third person or other force which, by its intervention, prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." V*on der Heide v. Commonwealth, Department of Transportation*, 553 Pa. 120, 718 A.2d 286, 288 (Pa. 1998).

A determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury. *See Mascaro v. Youth Study Center*, 514 Pa. 351, 358–59, 523 A.2d 1118, 1122 (1987) (quoting *Ford v. Jeffries*, 474 Pa. 588, 596 379 A.2d 111, 115 (1977) ("[I]t was for the jury to determine whether the appellee's conduct, if it was negligent, was superseded by the intervening force.") *See also* 57 Am.Jur.2d Negligence § 601 ("When facts are in dispute or room exists for a difference of opinion as to whether certain conduct is superseding or where facts are such that reasonable minds could differ as to whether the intervening act or cause constituted a superseding act or cause, the question is one for submission to the jury.")

Here, the record presents genuine issues of material fact regarding whether the expansion joint was defective based upon allegedly missing pieces and allegedly inadequate installation instructions. Further, Defendants have presented disputed issues of fact relative to Kiewit's control of the expansion joint and whether Kiewit's conduct was a superseding cause of Mr. Donnelly's injuries. Therefore, the Court cannot determine, as a matter of law, that Mr. Donnelly will not succeed on his negligence claims against Defendants.

Accordingly, Defendants' Motion for Summary Judgment, as regards Counts I and V, will be denied.

B. Strict Liability (Counts, II, III, VI and VII)

Under Section 402A of the Restatement (Second) of Torts, as adopted in Pennsylvania, a design-defect plaintiff must prove (1) the product was defective, (2) the defect existed when it left the supplier's control, and (3) the defect proximately caused the injury. *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 383–84 (Pa. 2014). A plaintiff can prove a defective condition by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer (the consumer expectations test), or (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions (the risk-utility test). *Id* at 401. Whether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact. *Id.* at 335.

1. Consumer Expectation (Counts II and VI)

Joenic and GE argue that Mr. Donnelly's theory of strict liability based on the "consumer expectation" does not apply to this particular case. Specifically, Defendants maintain that Mr. Donnelly, the Defendants, and Kiewit were not everyday consumers of the expansion joint and the construction of the filter house. Defendants argue that the incident occurred because of the Kiewit and the boilermakers did not safely perform the lift of one half of the joint, which Defendants assert could have been performed safely had Kiewit exercised reasonable care in the planning, means, and methods of the expansion joint lift.

Mr. Donnelly asserts, neither defendant has pleaded or proven the Restatement Second (Torts) § 388 "learned purchaser" defense. Mr. Donnelly contends that Section 388 permits a supplier to discharge its duty to warn only if it (a) provides adequate warnings to a learned-purchaser intermediary and (b) reasonably relies on that intermediary to communicate those warnings to downstream users.

13

The consumer expectations test defines a defective condition as a condition, upon normal use, dangerous beyond the reasonable consumer's contemplations. *Tincher* at 387. A product is in a defective condition if the danger is unknowable and unacceptable to the average or ordinary consumer. *Id*. A product is not defective if the ordinary consumer would reasonably anticipate and appreciate the dangerous condition of the product and the attendant risk of injury of which the plaintiff complains. *Id*. The nature of the product, the identity of the user, the product's intended use and user, and any express or implied representations by the manufacturer or other seller are among the relevant considerations when assessing the reasonable consumer's expectations. *Id*.

Here, at this stage, both Defendants and Mr. Donnelly's arguments are unpersuasive. As regards Defendants' assertions, the consumer expectations test speaks to whether Mr. Donnelly meets the defective condition element of his products liability claim. Generally, the defective condition element is a question of fact for the jury. Further, while Defendants state that consumer expectations test should not apply given the status of the parties, said test will depend on issues of expert testimony and witness credibility. Defendants also do not identify undisputed evidence of record regarding consumer expectations that would allow this Court to decide that Mr. Donnelly cannot meet his burden in Counts II and VI. On the other hand, Mr. Donnelly's argument seems to conflate two concepts in product liability law: the consumer expectations test and the sophisticated user defense. While Defendants have not asserted a sophisticated user defense, this does not excuse Mr. Donnelly's burden to meet the consumer expectations test, which establishes a product as defective, in his pursuit of Counts II and VI of his Complaint, wherein he identified consumer expectations theories of a design defect claim.

Accordingly, Defendants' Motion for Summary Judgment, as regards Count II and VI, will be denied.

2. Risk Utility (Counts III and VII)

Joenic contends the risk/utility test of a strict liability has no merit or application to the present case. GE argues that the risk/utility test would apply but fails, because there is insufficient evidence to support that the expansion joint was defective.

In his various responses, Mr. Donnelly does not address whether the expansion joint is a consumer product that would remove it from the risk/utility test. Mr. Donnelly does, though, dispute whether the expansion joint was defectively designed as supplied by GE.

The risk-utility test is a cost-benefit analysis. *Tincher*, at 389. A product is in a defective condition if a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions. *Id*. A seller's precautions to alert the consumer to the danger should anticipate and reflect the type and magnitude of the risk posed by the sale or use of the product. *Id.* Factors relevant to this risk-utility analysis include: (1) the product's usefulness and desirability, (2) its safety aspects, (3) the availability of a substitute product which would meet the same need and not be as unsafe, (4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility, (5) the user's ability to avoid danger by exercising care when using the product, (6) the user's anticipated awareness of the dangers inherent in the product either because of general public knowledge of the obvious condition of the product, or because of the existence of suitable warnings and instructions, and (7) the feasibility of spreading the loss by setting the price of the product or carrying liability insurance. *Id*. at 389–90.

Here, neither the Restatement (Second) of Torts Section 402A nor Pennsylvania case law distinguishes between a consumer and non-consumer product for purposes of a design defect claim. And even if the law supported such distinction, the record otherwise would contain issues of material fact on the categorization of the subject product. Therefore, Joenic's argument on the inapplicability of Mr. Donnelly's Risk/Utility theory of design defect liability is unavailing. Further, as regards GE's arguments, relative to defectiveness of the design, installation instructions, and Kiewit's alleged failure to consult on expansion joint installation, the record contains contradictory testimony and/or credibility questions that are best addressed by the jury.

Accordingly, Joenic's Motion for Summary Judgment, as regards Counts III and VII, will be denied.

C. Breach of Warranty (Count VIII)[1]

Joenic maintains the expansion joint, its hardware, or its shipping steel were not defective. Joenic contends, had it not been for Kiewit and its employees failing to secure the shipping steel to the expansion joint prior to the lift, one half of the expansion joint could have been installed successfully.

Mr. Donnelly argues that Joenic shipped an expansion joint with missing splice bars that were necessary to assemble the halves into a single, rigid unit. Mr. Donnelly further contends that Joenic provided vague, internally-conflicting instructions that forced Kiewit to improvise a two-piece lift. Thus, Mr. Donnelly asserts said defects rendered the expansion joint unmerchantable and unfit for its intended purpose the moment it left Joenic's control.

---

[1] GE's Motion for Summary Judgment does not address Mr. Donnelly's Breach of Warranty (Count IV) claim against it.

To prevail on a claim for breach of warranty under the Pennsylvania Uniform Commercial Code, a plaintiff must establish that a breach of warranty occurred and that the breach was the proximate cause of the specific damages sustained. *Price v. Chevrolet Motor Div. of Gen. Motors Corp.*, 2000 PA Super 410, ¶ 11, 765 A.2d 800, 809 (Pa. Super. Ct. 2000). a plaintiff must show that the product contained a defect to maintain a claim for breach of implied warranty. *Schlier v. Milwaukee Elec. Tool Corp.*, 835 F. Supp. 839 (E.D. Pa. 1993) (citing *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992)).

Here, the record contains testimony that the absence of splice plates in the expansion joint was a design flaw. There is further evidence that Kiewit could not assemble the expansion joint with the available instructions, drawings, and details provided. Such testimony and evidence create genuine issues of material fact relative to the issue of whether the expansion joint was defective. Moreover, as with the analysis above, causation relative to Kiewit's conduct is also a genuine issue of material fact that requires jury consideration. Therefore, the Court cannot determine, at this stage, as a matter of law whether Mr. Donnelly might succeed on his breach of warranty claims against Joenic.

Accordingly, Accordingly, Joenic's Motion for Summary Judgment, as regards Count VIII, will be denied.

IV. ORDER

Following consideration of the foregoing, it is hereby ordered as follows:

1. Mr. Donnelly's Motion for Partial Summary Judgment, as regards affirmative defenses of highly reckless conduct or product misuse for Counts VI and VII, is granted.

2. Mr. Donnelly's Motion for Partial Summary Judgment, as regards the merits of Defendants' affirmative defenses, with the exception of Joenic's defenses of highly reckless conduct and product misuse in Counts VI and VII, is denied.

3. Mr. Donnelly's Motion for Partial Summary Judgment, on the issue of apportioning liability to Kiewit, is granted.

4. Defendants' Motions for Summary Judgment are denied.

A separate order will follow to schedule a pre-trial conference.

Dated: October 31, 2025

_____
Marilyn J. Horan
United States District Judge